IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., NAGRASTAR LLC, | § § § | |
| *Plaintiffs,* | § § | SA-19-CV-00309-OLG |
| vs. | § § § | |
| HUMBERTO CAZARIN, | § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Plaintiffs' Motion for Summary Judgment [#10]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#11]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Plaintiff's motion be **GRANTED IN PART** as to liability.

**I. Background**

Plaintiffs DISH Network LLC ("DISH") and NagraStar LLC ("NagraStar") filed this action against Defendant Humberto Cazarin on March 26, 2019, alleging three counts: (1) a violation of the Digital Millenium Copyright Act, 17 U.S.C. § 1201, *et seq.*; (2) a violation of the Federal Communications Act, 47 U.S.C. § 605, *et seq.*; and (3) a violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511, *et seq.* (Orig. Compl. [#1].) Plaintiffs contend that Defendant has been circumventing DISH and NagraStar's security system and receiving

1

DISH's satellite broadcast without payment of the required subscription fee. (*Id.* at ¶ 7.) Defendant allegedly accomplished this by subscribing to pirate television services known as NFusion Private Server, through which Defendant illegally obtained Plaintiffs' control words to decrypt DISH's satellite signal and view DISH's programming without authorization. (*Id.*)

Plaintiffs filed the motion for summary judgment that is the subject of this report and recommendation on November 27, 2019. By their motion, Plaintiffs ask the Court to enter summary judgment in their favor as to Count III of their Complaint—Defendant's alleged violation of the Electronic Communications Privacy Act. According to this Court's Local Rules, Defendant's response to the motion was due within 14 days of the motion's filing, on or before December 11, 2019. *See* Loc. R. CV-7(e) (responses to dispositive motions due within 14 days of motion's filing). To date, Defendant has not filed a response to the motion. Pursuant to Local Rule CV-7(e), if there is no response filed within the time period prescribed by the rules, the court may grant the motion as unopposed. However, because the motion seeks dispositive relief, the Court will evaluate the merits.

## II. Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. Analysis

Plaintiffs are entitled to summary judgment on Count III of their Complaint—Defendant's violation of the Electronic Communications Privacy Act ("ECPA"). The ECPA makes it unlawful to "intentionally intercept" an "electronic communication." 18 U.S.C. § 2511(1)(a). Section 2520 of the Act provides for a private right of enforcement:

> [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

*Id.* § 2520(a). To prevail on its claim for a violation of the ECPA, Plaintiffs must demonstrate that Defendant intercepted or otherwise unlawfully appropriated its DISH's transmission. *DIRECTV Inc. v. Robson*, 420 F.3d 532, 537 (5th Cir. 2005).

The undisputed summary judgment evidence establishes that DISH is a multi-channel video provider that delivers video, audio, and data services to approximately to millions of authorized subscribers in the United States via a direct broadcast satellite system. (Duval Decl. [#10-13] at ¶ 5.) DISH uses high-powered satellite broadcast, among other things, movies, sports, and general entertainment services ("DISH Programming") to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay per view movie or event, the purchase price. (*Id.*) DISH programming is digitized, compressed, and scrambled before being transmitted to multiple satellites in geo-synchronous orbit above Earth. (*Id.* at ¶ 7.) The satellites, which have relatively fixed footprints covering the United States and certain parts of Mexico, Canada and the Caribbean, relay the scrambled signal back to Earth where it can be received by DISH subscribers that have the necessary equipment. (*Id.*) DISH provides receivers, satellite dish antenna, and other digital equipment for the DISH satellite television system, while NagraStar provides supplies smart cards and other proprietary security technologies that form the "condition access system." (*Id.* at ¶ 8.) Together, the receiver and smart card convert DISH's encrypted satellite signal into viewable programming that can be displayed on the attached television of an authorized DISH subscriber. (*Id.* at ¶ 10.) "Encrypted broadcasts of satellite television programming, such as those transmitted by DISH Network,

constitute 'electronic communications' under [the ECPA]." *Dish Network L.L.C. v. Horace*, No. 1:15-CV-369, 2016 WL 6039217, at *2 (E.D. Tex. Feb. 22, 2016) (citing *DirecTV, Inc. v. Bennett*, 470 F.3d 565, 567 (5th Cir. 2006)).

The summary judgment record also establishes that Defendant intercepted DISH's satellite transmissions through Internet Key Sharing ("IKS"), which is a form of DISH piracy based on the unauthorized harvesting and redistribution over the Internet of the control words that decrypt DISH's satellite signal. (Duval Decl. [#10-13] at ¶¶ 10–11.) With control words, an unauthorized receiver is able to decrypt DISH satellite signal and the user is able to watch DISH programming without authorization. (*Id.* at ¶ 11.) Records from NFusion Private Server ("NFPS"), a subscription-based IKS service, establish that Defendant subscribed to NFPS and purchased multiple IKS server passcodes throughout 2014 and 2015. (Ross Decl. [#10-1] at ¶ 3.) These records contain the email addresses of the customer purchasing the subscription, and Defendant's name and email address are listed therein in connection with the purchase of an IKS passcode on March 24, 2012. (Ross Decl. [#10-1] at ¶ 6; Records [#10-2].) Additional records establish that Defendant purchased multiple IKS server passcodes in 2012 and 2014 and link the email address used for these transactions to Defendant. (Ross Decl. [#10-1] at ¶¶ 7–9; Records [#10-3, #10-4, #10-5].)

Moreover, Plaintiffs served their First Set of Requests for Admission on Defendant on August 29, 2019, to which Defendant has still not responded. (Craven Decl. [#10-14] at ¶ 2.) A failure to respond to a request for admission within 30 days of service results in the requests being deemed admitted. Fed. R. Civ. P. 36(a)(3). Accordingly, these requests for admission further establish that Defendant made payments to NFPS for various subscriptions from 2012 to 2014; that Defendant used these subscriptions to view DISH programming; that Defendant did

not receive any form of authorization from Plaintiffs to view the DISH programming; and that Defendant circumvented Plaintiffs' security technology by viewing the DISH programming using NFPS. (Admissions [#10-15] at ¶¶ 3–20.)

Finally, the summary judgment evidence establishes that Defendant owned a Sonicview brand unauthorized receiver, which can be used in connection with the NFPS service to steal DISH programming, and posted on several piracy forums to report on the functionality of NFPS service in obtaining DISH programming. (Ross Decl. [#10-1] at ¶¶ 10–12; Forum Posts [#10-7, #10-8, #10-9, #10-10, #10-11, #10-12]; Admissions [#10-15] at ¶¶ 22–33.) This evidence demonstrates that Defendant has intercepted DISH's satellite signal in violation of the ECPA and Plaintiffs are entitled to summary judgment as to Count III of their Complaint.

In their motion, Plaintiffs ask the Court to issue a final judgment awarding statutory damages and permanent injunction as to this claim. In light of the parties' joint request to extend their mediation deadline and their intention to mediate this case in the near future, the undersigned recommends postponing a ruling on damages and injunctive relief with regard to Count III pending the outcome of the mediation. By separate order, the Court has granted the parties' joint motion and extended the parties' deadline to mediate this case. If the mediation is unsuccessful, Plaintiffs may refile their motion as to damages and injunctive relief.

## IV. Conclusion and Recommendation

Having considered the summary judgment record in light of the governing law and the lack of response from Defendant, the undersigned recommends that Plaintiffs' Motion for Summary Judgment [#10] be **GRANTED IN PART**, such that Plaintiffs are entitled to summary judgment on liability for Count III of their Complaint. In all other respects, the Motion [#10] should be **DENIED WITHOUT PREJUDICE** to refiling if the mediation is unsuccessful.

### V. Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 21st day of January, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE